JOHN H. LEE *vs.* WILLIAM C. KINDELAN, *Warden.*

FEBRUARY 27, 1953.

PRESENT: Flynn, C. J., Capotosto, Baker, Condon and O'Connell, JJ.

PER CURIAM. This communication, denominated "Verified Application For Writ Of Habeas Corpus," was received by registered mail from John H. Lee, presently confined in state prison where he is serving sentences imposed by the superior court after his conviction for committing criminal abortions as charged respectively in indictments No. 16324 (1932) and No. 24986 (1950). Although entitled "Verified Application," it is not sworn to and contains certain allegations that are contrary to fact, others that are argumentative, and still others that relate solely to alleged errors in the course of petitioner's trial. Ordinarily these defects would be sufficient to warrant a summary denial and dismissal of the application. However, in the special circumstances of this case we prefer not to rest our decision solely upon such defects but rather to consider and pass upon the merits of the allegations as we understand them.

The application or petition, either expressly or by reference to pertinent records, discloses certain important facts which will help to understand petitioner's present contentions. Among these facts are admissions in the transcript to various records of the court relating to petitioner as follows:

> December 2, 1920 petitioner on his plea of nolo contendere to a charge of committing a criminal abortion was given a deferred sentence.

> February 28, 1921 he was sentenced by the superior court to serve five years for violating the terms of such deferred sentence.

> March 23, 1923, on petitioner's plea of nolo contendere to a charge of committing another abortion, he was given a deferred sentence.

December 22, 1923 he was sentenced by the superior court to serve six years for violating the terms of that deferred sentence.

August 1, 1933, following a trial and conviction on another charge of criminal abortion resulting in death, petitioner was sentenced to serve twenty years in state prison.

January 30, 1945 he was granted liberty by the state parole board on a conditional parole.

March 17, 1950, following a trial and conviction on indictment No. 24986 charging petitioner with committing still another abortion, he was sentenced to "be imprisoned for and during the term of seven years from and after the expiration of a sentence" of twenty years now being served in said prison.

Other criminal offenses committed by petitioner are referred to in the transcript of his trial but we have stated only those which are related directly to sentences imposed after a conviction or plea of nolo contendere in cases charging the commission of crimes of abortion.

The general principle underlying the petition as we understand it is the claim that petitioner is illegally restrained of his liberty by the respondent warden of the state prison. To reach that conclusion he first alleges that his latest trial and conviction upon indictment No. 24986 and his sentence thereon to serve seven years "from and after" the termination of a previous twenty-year sentence are completely null and void. The reason alleged is substantially that he was deprived of the benefit of counsel in the superior or trial court and also in the supreme court on appeal, all in violation of the provisions of a certain quoted federal statute and the sixth amendment to the constitution of the United States.

Secondly, having assumed that his latest conviction and sentence are thus disposed of as null and void, he alleges that the sentence upon a prior conviction to serve twenty years beginning August 1, 1933 had been fully satisfied and had expired as a matter of law on April 20, 1950 at the

latest. This conclusion is reached by claiming that under general laws 1938, chapter 55, §18, as amended, he was entitled to receive credit for good behavior; that such credit would *reduce* the sentence to be served from twenty years to sixteen years and eight months; and therefore, as a matter of law, his sentence upon that conviction under indictment No. 16324 had been terminated for all purposes not later than April 20, 1950.

Thirdly, upon those two premises he argues further that the parole board had no jurisdiction over him on June 3, 1952 when, pursuant to an order of the superior court entered on his petition, the board held a hearing and confirmed their previous decision of October 5, 1949 to revoke his parole for violating the conditions thereof.

Finally, he alleges that during his last trial the trial justice erred in a portion of the charge to the jury as to certain evidence in relation to proof of intent, which was excepted to by his attorney and was included in the bill of exceptions that was later prosecuted to this court for review.

At the outset it is noted that all the allegations of fact in the petition are based upon incidents which appear in the record or in the transcript of his last trial, or which actually took place in the presence of this court when the case was previously being heard on petitioner's bill of exceptions. *State* v. *Lee,* 78 R. I. 46. Consequently we are cognizant of the facts which are alleged as the basis of the instant petition for a writ of habeas corpus and may determine it without the intervention of the attorney general or the holding of a new hearing.

The petitioner's first contention is in substance that he was deprived of the benefit of counsel in both the superior and supreme courts in violation of a federal statute and contrary to the sixth amendment to the United States constitution. He contends that the trial justice had no authority to grant the attorney's motion to withdraw unless at the same time other counsel was assigned at the

expense of the public to assist him in his "Appeal to Rhode Island Supreme Court." To support his contention he cites chiefly *State* v. *Hudson*, 55 R. I. 141, *Powell* v. *Alabama*, 287 U. S. 45, and *Uveges* v. *Pennsylvania*, 335 U. S. 437, and also states: " 'Whenever an accused appears in court without counsel, the court shall advise him of his right to counsel and assign one to him to represent him at all stages of the proceeding unless defendant elects to proceed without one, or is able to obtain one.' Title 28 U.S.C.A. Rule 44, section 2255." This contention is based in part upon a misconception of the applicable law and in part on certain misstatements of basic facts. The above quotation relied upon to support this contention as to the pertinent law states the substance of rule 44 of the Rules of Criminal Procedure in the federal courts and appears in Title 18 rather than Title 28 U.S.C.A. But obviously that rule is designed to govern proceedings in the federal and not in the state courts. Therefore it does not apply.

However, even if it were applicable here the findings of the trial justice in effect would exclude petitioner from now claiming the benefit thereof. The reasons are: first, that he actually had counsel throughout the entire trial to a jury and, secondly, that although he was found to be financially able to obtain another attorney thereafter he nevertheless intelligently and understandingly elected to proceed without one. This is evident from the record. During his trial the court had occasion to pass upon substantially the same claim under G. L. 1938, chap. 625, §62, as amended by P. L. 1941, chap. 1007, sec. 3, which reads: "It shall be the duty of the public defender to represent and act as attorney for indigent defendants in those criminal cases referred to him by the superior courts." Prior to such amendment it read as follows: "The superior court may appoint, whenever occasion may require, one or more attorneys to conduct the defense of any indigent person charged with any offense against the laws of the state." That provision was discussed by this court in *State* v.

*Hudson, supra,* which is relied upon by the petitioner. In that case we held that the power to appoint, at public expense, an attorney for an *indigent* prisoner was vested in the superior court; that such power was to be exercised in the sound judicial discretion of that court; and that on review we would not set aside a finding of a justice thereof unless there was evidence of a clear abuse of such discretion. The amendment by P. L. 1941, chap. 1007, requires no change in such conclusions.

In the instant case the trial justice in substance found from the evidence, including the testimony and attitude of petitioner himself during the trial, that he had several thousand dollars' worth of medical supplies in a business which he had been conducting; that he had been financially able to hire and had hired an attorney; and that in contemplation of the statute he was not an indigent person who was entitled to have the assistance of the public defender or new counsel appointed by the court at public expense. Such findings were made by the same trial justice who also had found during the trial, as appears in the transcript, that petitioner had the benefit and assistance of competent, experienced counsel who was effectively protecting his rights and conducting his defense before the jury. This court in its review of the case on petitioner's bill of exceptions found no abuse of discretion and expressly approved the trial justice's conclusions in this respect. *State* v. *Lee, supra.* The instant petition presents no new facts which in our judgment require a different view.

In the circumstances *State* v. *Hudson, supra,* is authority against rather than in favor of granting the petition. Nor is petitioner's case remotely like that of *Powell* v. *Alabama, supra,* or *Uveges* v. *Pennsylvania, supra,* which he also cites, since the defendant in each of those cases had no counsel at any time before the court and jury, and through ignorance, age or other circumstances was unable either to understand the nature of his plea or to effectively conduct his defense. Those cases presented facts that are so far different

from the circumstances in the instant record that they require no further discussion.

The petitioner further claims that this court through its chief justice failed to instruct him concerning his right to have counsel, or to ask "if a Waiver was signed" by him to appear without counsel. In effect or by implication he appears to claim that he was denied the right to be represented by counsel when his case was before us for review. In addition to being subject to other criticism this claim is based on allegations that are contrary to fact.

To understand petitioner's attitude in the supreme court it is helpful to recall that throughout the entire trial of the case before the jury in the superior court he actually was represented by an attorney of his own choice and hiring; that the trial justice found the attorney to be competent and efficient; that the express statements of petitioner and his attorney during the trial make it clear that the later motion of the attorney to withdraw, thus depriving petitioner of his continuing services, was not related at all to petitioner's ability or lack of ability to pay; and that such motion was precipitated by his persistent attempts to have the defense conducted *to his own satisfaction* regardless of the views of his attorney or the court; and that compliance with petitioner's dictates during trial would have required conduct which in the best judgment of the attorney was contrary to the rules of evidence, practice and ethics. The record also shows that the attorney did not file his motion to withdraw until after the jury had rendered their verdict and after he had protected petitioner's rights by filing the motion for a new trial. These facts were of record and were known to this court from the transcript.

In this connection it is also noted that under our practice the trial justice on a motion for a new trial may not review or reverse the law which he has given to the jury in his charge. He must apply the same law when he exercises his independent judgment in passing upon the evidence, the

weight thereof, and the credibility of the witnesses. An effective argument on the facts, therefore, was the desirable objective in petitioner's presentation of the motion for a new trial. It is clear from the transcript that he felt he was more familiar with the facts and was better able than his attorney to argue them before the trial justice. There is nothing to indicate that in personally arguing such motion he was unable to make an effective presentation of his case. His argument later before us gave ample evidence of his ability in that respect.

That background will help to understand why petitioner, when his bill of exceptions came before this court for review, deliberately elected to plead his own case rather than to seek an attorney to represent him, as he now seems to assert in his petition. The superior court, after a hearing, had denied his motion for appointment of new counsel and he prosecuted no exception thereto. Later, upon a request made in his behalf, he was accorded the privilege of being brought from the prison to this court so that he could personally argue his appeal. Such request would have been unnecessary and such privilege would not have been granted if he had intended to seek new counsel to appear in his behalf to argue the case in this court.

At any rate the fact is that when he appeared here he was given every opportunity by the court through the chief justice to continue the case so that he might obtain counsel. He not only rejected that suggestion but also insisted upon his right personally to argue his own case on that day on the brief which he had brought with him. Even though he were indigent under our statute, which is contrary to the previously approved findings of fact, this court could not force him to accept an attorney against his will. Nor could we properly deny him the right to personally argue his own case.

We do not understand the constitution or law to require that the court must exact a *signed waiver* by a defendant of his right to have counsel where such defendant in open

court intelligently, understandingly, and expressly insists upon his right to conduct his own defense. From petitioner's attitude and argument here, coupled with the time of his counsel's withdrawal and the reason therefor, and the disclosure of petitioner's ability to present his case, as indicated in the transcript, it is clear to us (1) that petitioner is keenly intelligent and experienced in criminal procedures; (2) that he understood the nature and legal effect of a plea of nolo contendere and also the conditions affixed to deferred sentences and paroles; (3) that he felt throughout the trial, because he was more familiar with the facts, that he could effectively conduct his defense better than his attorney; (4) that in arguing his own case in both the superior and supreme courts he demonstrated his ability to make such a presentation; and (5) that he intelligently, understandingly, deliberately, and voluntarily waived his right, if any, to have further counsel. Such conclusions are implicit in our opinion. *State* v. *Lee, supra.*

In our judgment there is no room upon this record as a whole and his conduct before this court to conclude that he was denied or deprived of any right to have counsel in violation of the state's law or of the sixth amendment to the United States constitution. The petitioner's first contention is therefore founded on misstatements of fact and on a misconception of the law and the cases which he cites.

However, on the assumption that his last conviction and sentence are thus completely nullified, he nevertheless proceeds to argue that following his trial and conviction under indictment No. 16324 for criminal abortion resulting in death he was sentenced to serve twenty years beginning August 1, 1933; that applying the credit for good behavior under the "Good Time Law" his sentence was *reduced* to sixteen years and eight months; and that having entirely served that time the sentence was terminated for all purposes and he was entitled, as a matter of law, to a release from prison on April 20, 1950 at the latest.

This contention is based upon a false assumption and a misconception of the law. Under no view of our statutes would that sentence *automatically* expire before August 1, 1953. General laws 1938, chap. 55, §18, as amended by P. L. 1951, chap. 2746, does not authorize an automatic reduction in the time to be served under a sentence, as petitioner contends. It expressly makes the permitted reduction subject to certain conditions as therein expressed, namely, the necessity for a particular record of good behavior, the recommendation of the chief of the division of jails and reformatories and of the director of social welfare, and the *consent of the governor*. There is no allegation or evidence whatever in this record that the chief of the division of jails and reformatories, or the director of social welfare, or the governor has ever recommended, approved or consented to such a reduction in petitioner's sentence.

Moreover, such statute should also be read in conjunction with G. L. 1938, chap. 617, which created a parole board and clothed it with certain powers. That statute, as amended by P. L. 1946, chap. 1687, and later by P. L. 1949, chap. 2161, grants no right to a convicted prisoner to have his freedom or to end his sentence at any time short of the sentence imposed. On the contrary it authorizes the board, except in certain designated cases, to grant *conditional* permits for liberty. *Eligibility* for a petition to the board for such conditional parole is therein provided for a prisoner who has served "not less than one-half of the term for which he was sentenced." In computing "one-half of the term," credit for time off for good behavior as specified in chap. 55, §18, *supra,* as amended, may be included. But nowhere is there any provision that the parole board must grant an applicant his liberty whenever he is eligible according to such computation; or that his sentence, if parole is granted, is thereby satisfied for all purposes.

Furthermore the board is not required even to receive a petition for parole from such a prisoner or to hold a hearing thereon. G. L. 1938, chap. 617, §8, as amended.

And P. L. 1949, chap. 2161, sec. 5, also provides that if the board after a hearing revokes the prisoner's permit to be at liberty for violation of its conditions, he shall be returned to the prison "to serve therein the remainder of his original sentence according to the terms thereof, and the time between the release of such prisoner under such permit and his return to state prison, the reformatories, or to the county jail, under such order of the board, shall not be considered as any part of his original sentence."

In the instant case, therefore, there is no validity to the petitioner's allegations that his sentence of twenty years beginning August 1, 1933 had been reduced or had automatically expired on April 20, 1950, or that it had been completely served in contemplation of the two abovementioned statutes. However, if for any reason such sentence had expired on April 20, 1950 the sentence upon his conviction under indictment No. 24986 to serve seven years "from and after" the expiration of the prior sentence would have been in effect and thus would prevent his claimed right to liberty as a matter of law.

This conclusion also answers the next contention of the petitioner that the parole board on June 3, 1952 had no jurisdiction over him when such board, after a hearing as ordered by the superior court, decided to revoke his parole for breach of its conditions and to confirm a prior decision made on October 5, 1949. Consequently at all times in question the petitioner has been lawfully within the jurisdiction of the respondent warden and is not entitled to the instant application for habeas corpus.

The petitioner's final contention need not be given extended consideration. In this jurisdiction the writ of habeas corpus is not a writ of review. Other procedures are open for that purpose to a defendant in a criminal case. The petitioner had the benefit of such a review on his bill of exceptions, which included the claim now being made concerning the charge of the superior court. *State* v. *Lee, supra*. We overruled his exceptions and in doing so we indicated

in substance and effect, because it was in conformity with the facts of which the members of this court had special and personal knowledge, that the petitioner had intelligently, understandingly, and voluntarily waived assistance of further counsel, had insisted upon his constitutional right to argue his own case, and in the circumstances had demonstrated his ability to effectively present the facts upon which his defense chiefly depended.

The petition for a writ of habeas corpus is denied and dismissed.